IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

KENNETH D. LESLIE, #156 048,        )
                                    )
        Plaintiff,                  )
                                    )
        v.                          ) CIVIL ACTION NO.:  2:12-CV-420-TMH
                                    )                [WO]
WARDEN GARY HETZEL, *et al.*,       )
                                    )
        Defendants.                 )


## RECOMMENDATION OF THE MAGISTRATE JUDGE

Plaintiff, an inmate incarcerated at the Easterling Correctional Facility located in Clio, Alabama, filed this 42 U.S.C. § 1983 action challenging matters associated with his assignment to administrative segregation on February 24, 2012. Plaintiff further complains that he is being denied access to courts. Named as defendants are Warden Gary Hetzel and Lieutenant Felix Woods.  Plaintiff seeks damages and injunctive relief.  Upon review of the complaint, the court concludes that dismissal of this case prior to service of process is appropriate under 28 U.S.C. § 1915(e)(2)(B).[1]

---

[1] A prisoner who is allowed to proceed *in forma pauperis* in this court will have his complaint screened in accordance with the provisions of 28 U.S.C. § 1915(e)(2)(B).  This screening procedure requires the court to dismiss a prisoner's civil action prior to service of process if it determines that the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary damages from a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

## I.  DISCUSSION

*A. Administrative Segregation*

On February 24, 2012 Warden Hetzel ordered that Plaintiff be detained on administrative segregation.[2]   Plaintiff complains that such conduct occurred in the absence of due process and in violation of prison regulations.  (*Doc. No. 1*.)

Plaintiff's claim that Defendant Hetzel violated prison regulations by failing to provide him with notice that he would be detained on administrative segregation entitles him to no relief.   While a violation of a state or federally-created liberty interest can amount to a violation of the Constitution, not every violation of state or federal law or state or federally-mandated procedures is a violation of the Constitution.  *See Buckley v. Barlow*, 997 F.2d 494 (8th Cir. 1993); *Shango v. Jurich*, 681 F.2d 1091, 1100 (7th Cir. 1982).   A prison's adoption of administrative rules and policies is, at most, a procedural right only; it does not confer any substantive right upon inmates. It, therefore,  does not give rise to a protected liberty interest requiring the procedural protections of the Fourteenth Amendment.  *See Buckley*,  997 F.2d at 495. Thus, a violation of a  prison's rules, regulations, and/or policies, without more, does not give rise to a federal constitutional violation.  *See Hernandez v. Estelle,* 788 F.2d 1154, 1158 (5th Cir. 1986).

---

[2]According to documents and records submitted in response to an earlier complaint filed by Plaintiff in this court, he  was found guilty on January 10, 2012 of violating a direct order of a correctional officer and sanctioned to 45 days of disciplinary segregation and 45 days loss of all privileges.  *See Leslie v. Green, et al*.,  Civil Action No. 2:12-CV-58-TMH (M.D. Ala.) (Doc. No. 7).

With respect to Plaintiff's allegation that Defendant Hetzel's conduct deprived him of due process, such claim entitles him to no relief on the facts alleged. The Supreme Court has identified two circumstances in which a prisoner, an individual already deprived of his liberty in the ordinary sense, can be further deprived of his liberty such that due process is required. "The first is when a change in a prisoner's conditions of confinement is so severe that it essentially exceeds the sentence imposed by the court. *See Sandin v. Conner,* 515 U.S. 472, 484, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995); *see, e.g., Vitek v. Jones,* 445 U.S. 480, 492-93, 100 S.Ct. 1254, 1263-64, 63 L.Ed.2d 552 (1980) (holding that a prisoner is entitled to due process prior to being transferred to a mental hospital). The second is when the state has consistently given a certain benefit to prisoners (for instance, via statute or administrative policy), and the deprivation of that benefit 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.' *Sandin,* 515 U.S. at 484, 115 S.Ct. at 2300; *see, e.g., Wolff v. McDonnell,* 418 U.S. 539, 558, 94 S.Ct. 2963, 2976, 41 L.Ed.2d 935 (1974) (prisoners may not be deprived of statutory 'good-time credits' without due process); *cf. Dudley v. Stewart,* 724 F.2d 1493, 1497-98 (11th Cir. 1984) (explaining how the state creates liberty interests). In the first situation, the liberty interest exists apart from the state; in the second situation, the liberty interest is created by the state." *Bass v. Perrin*, 170 F.3d 1312, 1318 (11th Cir. 1999).

The Constitution itself does not give rise to a liberty interest in avoiding transfer to

more adverse conditions of confinement. *See Meachum v. Fano,* 427 U.S. 215, 225 (1976) (no liberty interest arising from Due Process Clause itself in transfer from low-to maximum-security prison because "[c]onfinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose"); *Olim v. Wakinekona,* 461 U.S. 238, 245-246 (1983) (a prisoner has no constitutional right to be confined in a particular institution and may be subjected to an interstate transfer without implicating the Constitution). Moreover, an inmate in the Alabama prison system has no constitutionally protected interest in the procedure affecting his classification level, the privileges bestowed upon him, or confinement in the least restrictive prison environment because the resulting restraints are not so severe that they exceed the sentence imposed upon him. *Sandin,* 515 U.S. at 485 ("Discipline by prison officials in response to a wide range of misconduct falls within the expected parameters of the sentence imposed by a court of law."). Thus, the deprivations about which Plaintiff complains, without more, do not "exceed the sentence [imposed by the trial court] in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force." *Id*. at 484. This court must, therefore, determine whether the actions about which Plaintiff complains involve the deprivation of a state-created liberty interest as defined by the standard set forth in *Sandin*.

As the Supreme Court noted,

> *Sandin* involved prisoners' claims to procedural due process protection
> before placement in segregated confinement for 30 days, imposed as discipline

4

for disruptive behavior. *Sandin* observed that some of our earlier cases, *Hewitt v. Helms*, 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), in particular, had employed a methodology for identifying state-created liberty interests that emphasized "the language of a particular [prison] regulation" instead of "the nature of the deprivation." *Sandin*, 515 U.S., at 481, 115 S.Ct. 2293. In *Sandin*, we criticized this methodology as creating a disincentive for States to promulgate procedures for prison management, and as involving the federal courts in the day-to-day management of prisons. *Id.*, at 482-483, 115 S.Ct. 2293. For these reasons, we abrogated the methodology of parsing the language of particular regulations.

"[T]he search for a negative implication from mandatory language in prisoner regulations has strayed from the real concerns undergirding the liberty protected by the Due Process Clause. The time has come to return to the due process principles we believe were correctly established in and applied in *Wolff* and *Meachum*. Following *Wolff*, we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will generally be limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.*, at 483-484, 115 S.Ct. 2293 (citations and footnote omitted).

After *Sandin*, it is clear that the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves "in relation to the ordinary incidents of prison life." *Id.*, at 484, 115 S.Ct. 2293.

*Wilkinson v. Austin*, 545 U.S. 209, 222-23 (2005).

Applying the *Sandin* inquiry, the court concludes that Plaintiff's allegations regarding his assignment to administrative segregation under the circumstances described, "though concededly punitive, do[] not represent a dramatic departure from the basic conditions" of the sentence imposed upon him. *Id*. at 485. Plaintiff does not allege much less indicate that his confinement on segregation subjects him to "atypical and significant hardship . . . in

relation to the ordinary incidents of prison life." *Sandin* , 515 U.S. at 484.  Because Plaintiff

has not alleged deprivation  of a protected liberty interest, his complaint in relation thereto

fails to state  a due process claim.  *See id.* at 487; *Griffin v. Vaughn,* 112 F.3d 703, 706 (3rd

Cir. 1997).


**B.  *Access to Courts***

Plaintiff complains that Defendant Woods is denying him access to court. In support

of this claim Plaintiff states that Defendant Woods  limits his access to  the law library and

legal supplies,  prohibits him from speaking with a law clerk to receive legal advice,  fails

to  provide him with copies of administrative regulations, and "denies" him access to case

law which is not available at the facility.  (*Doc. No. 1*.)

The law is well established that the fundamental constitutional right of access to the

courts requires prison authorities to provide prisoners with adequate law libraries or adequate

assistance from persons trained in law to prosecute both post-conviction proceedings and

civil rights actions.  *Bounds v. Smith*, 430 U.S. 817 (1977), *Younger v. Gilmore*, 404 U.S.

15  (1971).  In *Lewis v.  Casey*, 518 U.S. 343 (1996), the  Supreme Court concluded,

however, that actual injury is required to state a claim for denial of access to the courts.  *Id.*

at 351-52.  Such injury will be shown when an inmate can "demonstrate that a  non-frivolous

legal claim has been  frustrated or was being impeded."  *Id*. at 353.  The  *Lewis* Court

*disclaimed* any expansions of the right of access to the court which suggested "that the State

must enable the prisoner to **discover grievances**, and to **litigate effectively** once in court. . ."
To demand the conferral of such sophisticated legal capabilities upon a mostly uneducated
and indeed largely illiterate prison population is [not something] . . . the Constitution
requires." *Id*. at 354. (emphasis in original).

The Court likewise rejected the argument that the mere claim of a systemic defect,
without a showing of actual injury, presented a claim sufficient to confer standing. *Lewis*,
518 U.S. at 349. Moreover, *Lewis* emphasizes that a *Bounds* violation is related to the lack
of an inmate's capability to present claims. *Id*. at 356. "*Bounds*, which as we have said
guarantees no particular methodology but rather the conferral of a capability -- the capability
of bringing contemplated challenges to sentences or conditions of confinement before the
courts. When any inmate . . . shows that an actionable claim of this nature which he desired
to bring has been lost or rejected, or that the presentation of such a claim is currently being
prevented, because this capability of filing suit has not been provided, he demonstrates" the
requisite actual injury. *Id.* Finally, the Court discerned that the injury requirement is
satisfied only when an inmate has been denied "a reasonably adequate opportunity to file
nonfrivolous legal claims challenging [his] convictions or conditions of confinement. . . .
[I]t is that capability, rather than the capability of turning pages in a law library, that is the
touchstone." *Id*. at 356-357. "[T]he Constitution does not require that prisoners . . . be able
to conduct generalized research, but only that they be able to present their grievances to the
courts - a more limited capability that can be produced by a much more limited degree of

legal assistance." *Id*. at 360.  The Court admonished that federal courts should allow prison officials to determine the best method of ensuring that inmates are provided a reasonably adequate opportunity to present their nonfrivolous claims of constitutional violations to the courts.  *Id*. at 356.  A federal district court must "'scrupulously respect[] the limits on [its] role,' by 'not . . . thrust[ing] itself into prison administration' and instead permitting '[p]rison administrators [to] exercis[e] wide discretion within the bounds of constitutional requirements.' [*Bounds*, 430] U.S. at 832-833, 97 S.Ct. at 1500." *Id*. at 363.

Plaintiff argues that he has been denied access to the courts in order to adequately prosecute another civil case pending in this court.  He fails to allege the exact nature of his frustrated claims or why he is unable to proceed on these alleged claims without the assistance of a law library, a law clerk, or unspecified legal materials.  Plaintiff's complaint fails to allege any specific facts showing that he suffered prejudice to any pending or contemplated direct appeals, habeas corpus applications, or non-frivolous civil rights claims, and thus, he has not demonstrated actual prejudice as required to set forth a valid claim for the denial of access to the courts.  Specifically, Plaintiff presents nothing to this court which demonstrates that the actions about which he complains relates to any conduct of Defendants or his inability to adequately access a law library or legal materials such that he experienced adverse consequences or an <u>actual</u> injury from the alleged deprivation as such is contemplated in *Lewis*.  *Lewis*, 518 U.S. at 349.  Because Plaintiff's allegations fail to articulate any "actual injury" accruing to him based on his contention that he has been denied

8

access to the courts, this claim is due to be dismissed under the provisions of 28 U.S.C. § 1915(e)(2)(B)(ii).

## C. Conspiracy

Plaintiff complains that Defendant Hetzel conspired with another correctional officer, Officer Greene, to house Plaintiff on administrative segregation based on Officer Greene's request that because "he was not comfortable with [Plaintiff] in population" due to an incident which occurred previously between Plaintiff and Officer Green. (*Doc. No. 1 at pg. 3.*)  This claim entitles Plaintiff to no relief.

In order to establish a § 1983 conspiracy, "a plaintiff must show among other things, that a defendant 'reached an understanding to violate [his] rights.' " *Rowe v. Fort Lauderdale,* 279 F.3d 1271, 1283 (11th Cir. 2002) (citation omitted) (brackets in original). This requires that Plaintiff provide more than a label or a conclusion. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (quoting *Twombly,* 550 U.S. at 556)). Plaintiff cannot rely on subjective suspicions and unsupported speculation but must provide sufficient facts to show that an agreement was made. *Id.* at 556.  In addition to pleading

facts to show that an agreement was reached to deny Plaintiff's rights, an "underlying actual denial of [his] constitutional rights" must be shown. *Hadley v. Gutierrez,* 526 F.3d 1324, 1332 (11ᵗʰ Cir. 2008).

Plaintiff's claim of conspiracy, at best, is a self serving, purely conclusory allegation that fails to assert those material facts necessary to establish a conspiracy by the defendant state actor.   Plaintiff alleges no facts suggesting a conspiracy or an agreement other than contending that Defendant Hetzel and Officer Greene had a common goal, scheme, or purpose  to violate his constitutional rights by housing him on administrative segregation. Such allegation does not allow the court to draw the conclusion that a conspiracy claim is plausible. *Iqbal,* 129 S.Ct. at 1949.  *See Fullman v. Graddick,* 739 F.2d 553, 556-57 (11ᵗʰ Cir. 1984) (holding that a conspiracy allegation that is vague and conclusory fails to state a claim upon which relief can be granted and is subject to dismissal).   Accordingly, the court concludes that Plaintiff's civil conspiracy claim against Warden Hetzel is due to be dismissed as it is insufficient to support a claim for relief under 42 U.S.C. § 1983.  *Iqbal*, 129 S.Ct. 1949; *Harvey*, 949 F.2d at 1133; *Fullman*, 739 F.2d at 556-557.

*D.  Retaliation*

In the complaint, Plaintiff states:

On 2-24-12 Warden Hetzel ordered me detained in Administrative Segregation by request of defendant Officer Greene in action (2:12-cv-58-TMH), he stated:

10

'Officer was not comfortable with me in population because of threat.'
(Disciplinary for threat disapproved by Warden).

(*Doc. No. 1 at pg. 3.*)

To the extent Plaintiff claims that his continued placement on administrative segregation is unfounded and/or based on false information because a disciplinary infraction Officer Greene issued against him in January 2012 for threatening a prison official was ultimately disapproved, *see Leslie v. Greene*, Civil Action No. 2:12-CV-58-TMH (M.D. Ala.) (Doc. No. 7),[3] such claim entitles Plaintiff to no relief. As previously explained, Plaintiff has no underlying liberty interest in his prison housing assignment, and under the circumstances presented, he has not stated a due process violation in this regard. *Sandin*, 515 U.S. 472; *Meachum*, 427 U. S. 215.

With respect to Plaintiff's allegation of retaliation, the court finds that he does no more than complain about his continued placement on administrative segregation, a circumstance which is not to his liking and/or which he feels is unjustified, and conclusorily claims that such action is based on a retaliatory motive. Plaintiff, however, alleges no chronology of events from which retaliation by Defendant Hetzel may plausibly be inferred. Plaintiff's blanket assertion that his continued detention on administrative segregation has a retaliatory basis because it is somehow based on the fact that the disciplinary infraction Officer Greene issued against him for making threats to a DOC official was disapproved is not only

---

[3]The disciplinaries issued against Plaintiff by Officer Greene arose out of incident which occurred between the two on January 1, 2012 and which resulted in Officer Greene spraying Plaintiff with mace. *See Leslie*, Civil Action No. 2:12-CV-58-TMH (Doc. No. 7).

insufficient to support a claim of retaliation by Warden Hetzel but is tenuous and speculative as well in this regard. *See Benson v. Cady*, 761 F.2d 335, 342 (7th Cir. 1985) (finding that a complaint "alleging merely the ultimate fact of retaliation is insufficient" and that complaint must allege a "chronology of events from which retaliation may be inferred."); *see also Iqbal*, 129 S.Ct. 1949; *Crawford-El v. Britton,* 523 U.S. 574, 600 (1998). Furthermore, Plaintiff's own evidentiary materials reflect that Warden Hetzel and another correctional official responded to his grievance concerning his housing assignment. These officials explained that the decision to keep Plaintiff housed on administrative segregation  has its genesis in the matters surrounding the January 2012  incident between Officer Greene and Plaintiff and Officer Greene's resulting concerns about Plaintiff being released back to general population which prison officials apparently feel could interfere with the safe and secure administration of the institution.  (*Doc. No. 1, Exh. A*).  *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 286-87 (1977).   Because Plaintiff's allegation of retaliation, on the face of the complaint, fails to state a claim on which relief may be granted, it is due to be dismissed.  28 U.S.C. § 1915(e)(2)(B)(ii).

## II.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that Plaintiff's complaint be DISMISSED with prejudice and prior to service of process  pursuant to the provisions of 28 U.S.C. § 1915(e)(2)(B)(i-ii).

It is further

ORDERED that on or before **August 8, 2012**  Plaintiff may file objections to the Recommendation.   Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which Plaintiff objects.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 25th day of July, 2012.


_____/s/Charles S. Coody_____
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE